FILED

CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT OF CAL.
LOS ANGELES

2008 APR 17  PM 12: 38

BY:

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2008 Grand Jury

| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>                    v.<br><br>EVELYN PELAYO,<br>RODOLFO EBROLE DEMAFELIZ, JR.,<br>  aka "Duden," and<br>ROLLETA EBROLE RIAZON,<br><br><br><br><br><br><br>                    Defendants. | CR No. 08- **CR08- 0 0458**<br><br>I N D I C T M E N T<br><br>[8 U.S.C. § 1324(a)(1)(A)(v)(I):<br>Conspiracy to Encourage, Induce,<br>Transport, Harbor, and Conceal<br>Illegal Aliens for Commercial<br>Advantage and Private Financial<br>Gain; 8 U.S.C.<br>§ 1324(a)(2)(B)(ii): Bringing<br>Illegal Aliens for Private<br>Financial Gain; 8 U.S.C.<br>§§ 1324(a)(1)(A)(iii),<br>  (a)(1)(B)(i): Harboring and<br>Concealing Illegal Aliens for<br>Financial Gain; 18 U.S.C.<br>§ 2(a), (b): Aiding and Abetting<br>and Causing an Act to be Done] |

The Grand Jury charges:

                           COUNT ONE

              [8 U.S.C. § 1324(a)(1)(A)(v)(I)]

A.    **OBJECTS OF THE CONSPIRACY**

     Beginning on a date unknown to the Grand Jury and continuing

to at least April 3, 2008, in Los Angeles County, within the

Central District of California, and elsewhere, defendants EVELYN
PELAYO ("PELAYO"), RODOLFO EBROLE DEMAFELIZ, JR. ("DEMAFELIZ"),
also known as "Duden," and ROLLETA EBROLE RIAZON ("RIAZON"), and
others known and unknown to the Grand Jury, conspired and agreed
with each other:

1.    to encourage and induce one or more aliens to come to,
enter, and reside in the United States for the purpose of
commercial advantage and private financial gain, knowing and in
reckless disregard of the fact that such coming to, entry, and
residence would be unlawful, in violation of Title 8, United
States Code, Sections 1324(a)(1)(A)(iv) and 1324(a)(1)(B)(i);

2.    to transport and move one or more aliens within the
United States for the purpose of commercial advantage and private
financial gain, knowing and in reckless disregard of the fact
that each alien had unlawfully come to, entered, and resided in
the United States, in violation of Title 8, United States Code,
Sections 1324(a)(1)(A)(ii) and 1324(a)(1)(B)(i); and

3.    to conceal, harbor, and shield from detection one or
more aliens in the United States for the purpose of commercial
advantage and private financial gain, knowing and in reckless
disregard of the fact that each alien had unlawfully come to,
entered, and remained in the United States, in violation of Title
8, United States Code, Sections 1324(a)(1)(A)(iii) and
1324(a)(1)(B)(i).

B.    **MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE
      ACCOMPLISHED**

The objects of the conspiracy were to be accomplished, in
substance, as follows:

1.   Defendant PELAYO would own and operate Vernon Way Care Home, L.L.C. ("Vernon Care Home") and Walton Care Home, L.L.C., "Walton Care Home"), residential elder-care facilities in Long Beach, California, within the Central District of California.

2.   Defendant PELAYO would recruit Filipino nationals living in the Philippines to work as care providers at Vernon Care Home and Walton Care Home.

3. Defendant PELAYO would direct and oversee the alien smuggling activities by making arrangements with defendant DEMAFELIZ to bring Filipino nationals to the United States with visas issued for the purpose of attending martial art competitions, when in truth and in fact, as defendants PELAYO, DEMAFELIZ, and RIAZON well knew, the aliens were brought into the United States to work for defendant PELAYO at Vernon Care Home and Walton Care Home.

4.   Defendant PELAYO would instruct the aliens to contact defendant DEMAFELIZ in Manila, the Philippines, to assist in making plans to come to the United States unlawfully.

5.   Defendant DEMAFELIZ would instruct the aliens to travel to Manila, the Philippines, where defendants DEMAFELIZ and RIAZON would train them in the martial art of Taekwondo for approximately one to three months.

6.   Defendants DEMAFELIZ and RIAZON, and co-conspirators known and unknown to the Grand Jury, would assist the aliens with fraudulently obtaining United States visas for the purpose of attending martial art competitions, including issuing the aliens Taekwondo certificates falsely representing that the aliens had studied Taekwondo and participated in Taekwondo

3

competitions and clinics, providing the aliens with a list of
questions that the consular official would ask during the visa
application interview, and providing the aliens with the
appropriate answers in order to ensure issuance of a visa.

7.   Defendants DEMAFELIZ and RIAZON, and co-conspirators
known and unknown to the Grand Jury, would bring aliens from the
Philippines to the United States by presenting the fraudulently
obtained visas to immigration officials at various ports of entry
within the United States.

8.   After the aliens successfully entered the United
States, defendant DEMAFELIZ would confiscate their passports,
transport the aliens to defendant PELAYO, and turn over the
passports to defendant PELAYO.

9.   Defendant PELAYO would then house and employ the aliens
at Vernon Care Home and Walton Care Home as care providers.

10.   Defendant PELAYO would pay each alien approximately
$600 to $1000 per month to work for Vernon Care Home and Walton
Care Home, seven days a week, 24 hours a day.   However, defendant
PELAYO would withhold a portion of the aliens' salaries as
payment towards smuggling fees that defendant PELAYO claimed the
aliens owed her.

11.   Defendants PELAYO, DEMAFELIZ, and RIAZON, and co-
conspirators known and unknown to the Grand Jury, would engage in
such alien smuggling, transporting, and harboring activities for
profit.   Specifically, defendant PELAYO would pay defendant
DEMAFELIZ approximately $6,000 for each illegal alien to be
smuggled to Los Angeles, California, from the Philippines.
Defendant PELAYO would inform the smuggled aliens that she had

4

1 paid $12,000 to smuggle them into the United States, and then
2 tell the aliens that they must work for below market wages at
3 Vernon Care Home and Walton Care Home for ten years in order to
4 repay defendant PELAYO for those smuggling fees.

5     12.   Defendant PELAYO would tell the aliens to refrain from
6 contact with neighbors, strangers, or the police because of their
7 illegal immigration status.

8     13.   In order to instill fear and complacency in the alien
9 workers, and to prevent them from leaving Vernon Care Home and
10 Walton Care Home, defendant PELAYO would threaten the aliens
11 that, if they left, she would notify law enforcement officials
12 that the aliens were illegally residing in the United States and
13 that they had stolen from defendant PELAYO.

14 **C.   OVERT ACTS**

15     In furtherance of the conspiracy and to accomplish its
16 objects, on or about the dates indicated below, defendants
17 PELAYO, DEMAFELIZ, and RIAZON, and co-conspirators known and
18 unknown to the Grand Jury, committed the following overt acts,
19 among others, within the Central District of California and
20 elsewhere:

21 **Transporting and Harboring Alien A.G.**

22     1.   In or before August 2005, defendant PELAYO recruited
23 alien A.G. to come to the United States to work at Vernon Care
24 Home and Walton Care Home.

25     2.   In or about August 2005, defendant PELAYO instructed
26 alien A.G. to telephone defendant DEMAFELIZ in order to arrange
27 for his/her smuggling into the United States.

28     3.   In or about August 2005, defendant DEMAFELIZ instructed

5

alien A.G. to travel to Manila, the Philippines, in order to make plans to come to the United States unlawfully.

4.   In or about August 2005, defendants DEMAFELIZ and RIAZON trained alien A.G. in Taekwondo for approximately two months.

5.   In or about September 2005, defendant DEMAFELIZ prepared for alien A.G. a fraudulent certificate of employment as a Taekwondo instructor and a fraudulent certificate of promotion to black belt.

6.   On or about September 27, 2005, defendant DEMAFELIZ took alien A.G. to the United States Embassy in Manila, the Philippines, in order to fraudulently obtain a visa to enter the United States.

7.   On or about October 7, 2005, defendant DEMAFELIZ brought alien A.G. from the Philippines, aboard China Airlines flight number 1640/1055, to Los Angeles International Airport ("LAX").

8.   In or about October 2005, defendant DEMAFELIZ transported and provided accommodations for alien A.G. for approximately one week in the Los Angeles, California area.

9.   In or about October 2005, defendant DEMAFELIZ transported alien A.G. to a meeting in the Los Angeles, California area with defendant PELAYO.  At this meeting, defendant DEMAFELIZ provided defendant PELAYO with alien A.G.'s passport, which defendant DEMAFELIZ had previously confiscated from alien A.G.

10.  On or about October 15, 2005, defendant PELAYO transported alien A.G. to Vernon Care Home.

6

11. Beginning on or about October 15, 2005, and continuing until in or about February 2008, defendant PELAYO employed alien A.G. at Vernon Care Home and required that alien A.G. reside at the nursing home facility.

12. Beginning on or about October 15, 2005, and continuing until in or about February 2008, defendant PELAYO withheld a portion of the salary earned by alien A.G. as payment towards his/her smuggling debt owed to defendant PELAYO.

13. Beginning on or about October 15, 2005, and continuing until in or about February 2008, defendant PELAYO instructed alien A.G. not to speak with neighbors, patients, patients' family members, or law enforcement officials.

14. Beginning on or about October 15, 2005, and continuing until in or about February 2008, defendant PELAYO threatened to notify law enforcement officials of alien A.G.'s illegal presence in the United States and to have him/her deported to the Philippines if he/she tried to run away from defendant PELAYO.

**Transporting and Harboring Alien J.D.**

15. In early 2007, defendant PELAYO recruited alien J.D. to come to the United States to work at Vernon Care Home.

16. In early 2007, defendant PELAYO instructed alien J.D. to contact defendant DEMAFELIZ in order to arrange for his/her smuggling to the United States.

17. Beginning in or about April 2007, and continuing until May 2007, defendants DEMAFELIZ and RIAZON trained alien J.D. in Taekwondo.

18. In or about May 2007, defendants DEMAFELIZ and RIAZON

7

1  prepared fraudulent certificates stating that alien J.D. had
2  received extensive training in Taekwondo and was promoted to a
3  black belt.

4       19.  In or about May 2007, defendants DEMAFELIZ and RIAZON
5  provided alien J.D. with a handout that outlined the questions
6  that would be asked at the consular interview and coached alien
7  J.D. to answer the interview questions in order to secure the
8  issuance of a nonimmigrant visa.

9       20.  In or about May 2007, defendants DEMAFELIZ and RIAZON
10 took alien J.D. to the United States Embassy in Manila, the
11 Philippines, in order to fraudulently obtain a visa to enter the
12 United States.

13      21.  On or about May 21, 2007, defendant RIAZON provided
14 alien J.D. with an airplane ticket to Los Angeles, California,
15 and drove alien J.D. to the Manila International Airport, where
16 alien J.D. boarded a flight to Los Angeles, California.

17      22.  On or about May 21, 2007, defendant DEMAFELIZ met alien
18 J.D. at LAX and transported alien J.D. to a meeting with
19 defendant PELAYO, who then transported alien J.D. to Vernon Care
20 Home, and confiscated alien J.D.'s passport.

21      23.  Beginning on or about May 21, 2007, and continuing
22 until on or about February 19, 2008, defendant PELAYO employed
23 alien J.D. at Vernon Care Home and required that alien J.D.
24 reside at the nursing home facility.

25      24.  Beginning on or about May 21, 2007, and continuing
26 until on or about February 19, 2008, defendant PELAYO withheld a
27 portion of the salary earned by alien J.D. as payment towards
28 his/her smuggling debt owed to defendant PELAYO.

8

25.   Beginning on or about May 21, 2007, and continuing until on or about February 19, 2008, defendant PELAYO instructed alien J.D. not to speak with neighbors, patients, patients' family members, or law enforcement officials.

26.   Beginning on or about May 21, 2007, and continuing until on or about February 19, 2008, defendant PELAYO threatened to notify law enforcement officials of alien J.D.'s illegal presence in the United States and to have him/her deported to the Philippines if he/she tried to run away from defendant PELAYO.

27.   On or about February 20, 2008, defendant PELAYO filed a false police report with the Long Beach Police Department alleging that alien J.D. stole $700 and some jewelry from defendant PELAYO's home before running away.

28.   On or about February 22, 2008, defendant PELAYO spoke with alien J.D. on the telephone and offered to withdraw the false police report if alien J.D. paid $10,200 in outstanding smuggling fees.

COUNT TWO

[8 U.S.C. § 1324(a)(2)(B)(ii); 18 U.S.C. §§ 2(a), (b)]

On or about October 7, 2005, in Los Angeles County, within the Central District of California, and elsewhere, defendant RODOLFO EBROLE DEMAFELIZ, JR., also known as "Duden," brought and attempted to bring alien A.G. to the United States, for the purpose of commercial advantage and private financial gain, knowing and in reckless disregard of the fact that alien A.G. had not received prior official authorization to come to, enter, and reside in the United States.

At the same time and place, defendant EVELYN PELAYO aided, abetted, counseled, commanded, induced, and procured, and willfully caused the commission of the offense alleged above.

COUNT THREE

[8 U.S.C. § 1324(a)(2)(B)(ii); 18 U.S.C. §§ 2(a), (b)]

On or about May 21, 2007, in Los Angeles County, within the Central District of California, and elsewhere, defendant RODOLFO EBROLE DEMAFELIZ, JR., also known as "Duden," brought and attempted to bring alien J.D. to the United States, for the purpose of commercial advantage and private financial gain, knowing and in reckless disregard of the fact that alien J.D. had not received prior official authorization to come to, enter, and reside in the United States.

At the same time and place, defendant EVELYN PELAYO aided, abetted, counseled, commanded, induced, and procured, and willfully caused the commission of the offense alleged above.

COUNT FOUR

[8 U.S.C. §§ 1324(a)(1)(A)(iii), (a)(1)(B)(i)]

Beginning on or about October 15, 2005, and continuing to in or about February 2008, in Los Angeles County, within the Central District of California, defendant EVELYN PELAYO, knowing and in reckless disregard of the fact that alien A.G. had come to, entered, and remained in the United States in violation of law, concealed, harbored, and shielded from detection alien A.G., and did so for the purpose of commercial advantage and private financial gain.

COUNT FIVE

[8 U.S.C. §§ 1324(a)(1)(A)(iii), (a)(1)(B)(i)]

Beginning in or about May 2007, and continuing to in or about February 2008, in Los Angeles County, within the Central District of California, defendant EVELYN PELAYO, knowing and in reckless disregard of the fact that alien J.D. had come to, entered, and remained in the United States in violation of law, concealed, harbored, and shielded from detection alien J.D., and did so for the purpose of commercial advantage and private financial gain.

A TRUE BILL

/s/

Foreperson

THOMAS P. O'BRIEN
United States Attorney

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division

CURTIS A. KIN
Assistant United States Attorney
Chief, Domestic Security & Immigration Crimes Section

SANDY N. LEAL
Assistant United States Attorney
Deputy Chief, Domestic Security & Immigration Crimes Section

KAYLA BAKSHI
Trial Attorney
Civil Rights Division, U.S. Department of Justice

13