FILED

2008 JUN -5 PM 2: 47

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY_____ MW

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2008 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>           v.<br><br>EVELYN PELAYO,<br>RODOLFO EBROLE DEMAFELIZ, JR.,<br>  aka "Duden,"<br>ROLLETA EBROLE RIAZON, and<br>DARWIN PADOLINA,<br><br>           Defendants. | CR No. 08-458(A)-GAF<br><br>F I R S T<br>S U P E R S E D I N G<br>I N D I C T M E N T<br><br>[8 U.S.C. § 1324(a)(1)(A)(v)(I):<br>Conspiracy to Encourage, Induce,<br>Transport, Harbor, and Conceal<br>Illegal Aliens for Commercial<br>Advantage and Private Financial<br>Gain; 8 U.S.C.<br>§ 1324(a)(2)(B)(ii): Bringing<br>Illegal Aliens for Private<br>Financial Gain; 8 U.S.C.<br>§§ 1324(a)(1)(A)(iii),<br>(a)(1)(B)(i): Harboring and<br>Concealing Illegal Aliens for<br>Financial Gain; 18 U.S.C.<br>§ 2(a), (b): Aiding and Abetting<br>and Causing an Act to be Done;<br>18 U.S.C. § 1589: Forced Labor;<br>18 U.S.C. § 1590: Trafficking<br>with Respect to Forced Labor; 18<br>U.S.C. § 1591: Unlawful Conduct<br>with Respect to Documents in<br>Furtherance of Trafficking or<br>Forced Labor; 18 U.S.C.<br>§ 1594(b): Trafficking<br>Forfeiture.] |

The Grand Jury charges:

COUNT ONE

[8 U.S.C. § 1324(a)(1)(A)(v)(I)]

A.  **OBJECTS OF THE CONSPIRACY**

Beginning on a date unknown to the Grand Jury and continuing to at least April 3, 2008, in Los Angeles County, within the Central District of California, and elsewhere, defendants EVELYN PELAYO ("PELAYO"), RODOLFO EBROLE DEMAFELIZ, JR. ("DEMAFELIZ"), also known as "Duden," ROLLETA EBROLE RIAZON ("RIAZON"), and DARWIN PADOLINA ("PADOLINA") and others known and unknown to the Grand Jury, conspired and agreed with each other:

1.   to encourage and induce one or more aliens to come to, enter, and reside in the United States for the purpose of commercial advantage and private financial gain, knowing and in reckless disregard of the fact that such coming to, entry, and residence would be unlawful, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(iv) and 1324(a)(1)(B)(i);

2.   to transport and move one or more aliens within the United States for the purpose of commercial advantage and private financial gain, knowing and in reckless disregard of the fact that each alien had unlawfully come to, entered, and resided in the United States, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(ii) and 1324(a)(1)(B)(i); and

3.   to conceal, harbor, and shield from detection one or more aliens in the United States for the purpose of commercial advantage and private financial gain, knowing and in reckless disregard of the fact that each alien had unlawfully come to, entered, and remained in the United States, in violation of Title

2

8, United States Code, Sections 1324(a)(1)(A)(iii) and 1324(a)(1)(B)(i).

B.   **MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED**

The objects of the conspiracy were to be accomplished, in substance, as follows:

1.   Defendant PELAYO would own and operate Vernon Way Care Home, L.L.C. ("Vernon Care Home") and Walton Care Home, L.L.C., "Walton Care Home"), residential elder-care facilities in Long Beach, California, within the Central District of California.

2.   Defendant PELAYO would recruit Filipino nationals living in the Philippines to work as care providers at Vernon Care Home and Walton Care Home.

3. Defendant PELAYO would direct and oversee the alien smuggling activities by making arrangements with defendant DEMAFELIZ to bring Filipino nationals to the United States with visas issued for the purpose of attending martial arts competitions, when in truth and in fact, as defendants PELAYO, DEMAFELIZ, RIAZON, and PADOLINA well knew, the aliens were brought into the United States to work for defendant PELAYO at Vernon Care Home and Walton Care Home.

4.   Defendant PELAYO would instruct the aliens to contact defendant DEMAFELIZ in Manila, the Philippines, to assist in making plans to come to the United States unlawfully.

5.   Defendant DEMAFELIZ would instruct the aliens to travel to Manila, the Philippines, where defendants DEMAFELIZ and RIAZON would train them in the martial art of Taekwondo for approximately one to three months.

6.   Defendants DEMAFELIZ and RIAZON, and co-conspirators known and unknown to the Grand Jury, would assist the aliens with fraudulently obtaining United States visas for the purpose of attending martial art competitions, including issuing the aliens Taekwondo certificates falsely representing that the aliens had studied Taekwondo and participated in Taekwondo competitions and clinics, providing the aliens with a list of questions that the consular official would ask during the visa application interview, and providing the aliens with answers in order to ensure issuance of a visa.

7.   Defendants DEMAFELIZ and RIAZON, and co-conspirators known and unknown to the Grand Jury, would bring aliens from the Philippines to the United States by presenting the fraudulently obtained visas to immigration officials at various ports of entry within the United States.

8.   After the aliens successfully entered the United States, defendant DEMAFELIZ would confiscate their passports, transport the aliens to defendant PELAYO, and turn over the passports to defendant PELAYO.

9.   Defendants PELAYO and PADOLINA would transport the aliens to Vernon Care Home and Walton Care Home.

10.   Defendants PELAYO and PADOLINA would then house the aliens at Vernon Care Home and Walton Care Home, and defendant PELAYO would employ those aliens at Vernon Care Home and Walton Care Home as care providers.

11.   Defendant PELAYO would pay each alien approximately $600 to $1,000 per month to work for Vernon Care Home and Walton Care Home, seven days a week, 24 hours a day. However, defendant

1  PELAYO would withhold a portion of the aliens' salaries as

2  payment towards smuggling fees that defendant PELAYO claimed the

3  aliens owed her.

4      12.  Defendants PELAYO, DEMAFELIZ, RIAZON, and PADOLINA, and

5  co-conspirators known and unknown to the Grand Jury, would engage

6  in such alien smuggling, transporting, and harboring activities

7  for profit.  Specifically, defendant PELAYO would pay defendant

8  DEMAFELIZ approximately $6,000 for each illegal alien to be

9  smuggled to Los Angeles, California, from the Philippines.

10  Defendant PELAYO would inform the smuggled aliens that she had

11  paid $12,000 to smuggle them into the United States, and then

12  tell the aliens that they must work for below market wages at

13  Vernon Care Home and Walton Care Home for ten years in order to

14  repay defendant PELAYO for those smuggling fees.

15      13.  Defendant PELAYO would tell the aliens to refrain from

16  contact with neighbors, strangers, or the police because of their

17  illegal immigration status.

18      14.  In order to instill fear and complacency in the alien

19  workers, and to prevent them from leaving Vernon Care Home and

20  Walton Care Home, defendant PELAYO would threaten the aliens

21  that, if they left, she would notify law enforcement officials

22  that the aliens were illegally residing in the United States and

23  that they had stolen from defendant PELAYO.

24  C.  **OVERT ACTS**

25      In furtherance of the conspiracy and to accomplish its

26  objects, on or about the dates indicated below, defendants

27  PELAYO, DEMAFELIZ, RIAZON, and PADOLINA, and co-conspirators

28  known and unknown to the Grand Jury, committed the following

overt acts, among others, within the Central District of California, and elsewhere:

### Transporting and Harboring Alien A.G.

1.   In or before August 2005, defendant PELAYO recruited alien A.G. to come to the United States to work at Vernon Care Home and Walton Care Home.

2.   In or about August 2005, defendant PELAYO instructed alien A.G. to telephone defendant DEMAFELIZ in order to arrange for his/her smuggling into the United States.

3.   In or about August 2005, defendant DEMAFELIZ instructed alien A.G. to travel to Manila, the Philippines, in order to make plans to come to the United States unlawfully.

4.   In or about August 2005, defendants DEMAFELIZ and RIAZON trained alien A.G. in Taekwondo for approximately two months.

5.   In or about September 2005, defendant DEMAFELIZ prepared for alien A.G. a fraudulent certificate of employment as a Taekwondo instructor and a fraudulent certificate of promotion to black belt.

6.   On or about September 27, 2005, defendant DEMAFELIZ took alien A.G. to the United States Embassy in Manila, the Philippines, in order to fraudulently obtain a visa to enter the United States.

7.   On or about October 7, 2005, defendant DEMAFELIZ brought alien A.G. from the Philippines, aboard China Airlines flight number 1640/1055, to Los Angeles International Airport ("LAX").

8.   In or about October 2005, defendant DEMAFELIZ

1    transported and provided accommodations for alien A.G. for

2    approximately one week in the Los Angeles, California area.

3         9.   In or about October 2005, defendant DEMAFELIZ

4    transported alien A.G. to a meeting in the Los Angeles,

5    California area with defendant PELAYO.  At this meeting,

6    defendant DEMAFELIZ provided defendant PELAYO with alien A.G.'s

7    passport, which defendant DEMAFELIZ had previously confiscated

8    from alien A.G.

9         10.  On or about October 15, 2005, defendant PELAYO

10   transported alien A.G. to Vernon Care Home.

11        11.  Beginning on or about October 15, 2005, and continuing

12   until in or about February 2008, defendants PELAYO and PADOLINA

13   housed alien A.G. at Vernon Care Home.

14        12.  Beginning on or about October 15, 2005, and continuing

15   until in or about February 2008, defendant PELAYO employed alien

16   A.G. at Vernon Care Home and required that alien A.G. reside at

17   the nursing home facility.

18        13.  Beginning on or about October 15, 2005, and continuing

19   until in or about February 2008, defendant PELAYO withheld a

20   portion of the salary earned by alien A.G. as payment towards

21   his/her smuggling debt owed to defendant PELAYO.

22        14.  Beginning on or about October 15, 2005, and continuing

23   until in or about February 2008, defendant PELAYO instructed

24   alien A.G. not to speak with neighbors, patients, patients'

25   family members, or law enforcement officials.

26        15.  Beginning on or about October 15, 2005, and continuing

27   until in or about February 2008, defendant PELAYO threatened to

28   notify law enforcement officials of alien A.G.'s illegal presence

23.   On or about May 21, 2007, defendant RIAZON provided alien J.D. with an airplane ticket to Los Angeles, California, and drove alien J.D. to the Manila International Airport, where alien J.D. boarded a flight to Los Angeles, California.

24.   On or about May 21, 2007, defendant DEMAFELIZ met alien J.D. at LAX and transported alien J.D. to a meeting with defendant PELAYO, who then transported alien J.D. to Vernon Care Home, and confiscated alien J.D.'s passport.

25.   Beginning on or about May 21, 2007, and continuing until on or about February 19, 2008, defendants PELAYO and PADOLINA housed alien J.D. at Vernon Care Home.

26.   Beginning on or about May 21, 2007, and continuing until on or about February 19, 2008, defendant PELAYO employed alien J.D. at Vernon Care Home and required that alien J.D. reside at the nursing home facility.

27.   Beginning on or about May 21, 2007, and continuing until on or about February 19, 2008, defendant PELAYO withheld a portion of the salary earned by alien J.D. as payment towards his/her smuggling debt owed to defendant PELAYO.

28.   Beginning on or about May 21, 2007, and continuing until on or about February 19, 2008, defendant PELAYO instructed alien J.D. not to speak with neighbors, patients, patients' family members, or law enforcement officials.

29.   Beginning on or about May 21, 2007, and continuing until on or about February 19, 2008, defendant PELAYO threatened to notify law enforcement officials of alien J.D.'s illegal presence in the United States and to have him/her deported to the Philippines if he/she tried to run away from defendant PELAYO.

30.   On or about February 19, 2008, defendants PELAYO and PADOLINA searched by foot and in separate vehicles for alien J.D. after he/she ran away.

31.   On or about February 20, 2008, defendant PELAYO filed a false police report with the Long Beach Police Department alleging that alien J.D. stole $700 and some jewelry from defendant PELAYO's home before running away.

32.   On or about February 22, 2008, defendant PELAYO spoke with alien J.D. on the telephone and offered to withdraw the false police report if alien J.D. paid $10,200 in outstanding smuggling fees.

COUNT TWO

[8 U.S.C. § 1324(a)(2)(B)(ii); 18 U.S.C. §§ 2(a), (b)]

On or about October 7, 2005, in Los Angeles County, within the Central District of California, and elsewhere, defendant RODOLFO EBROLE DEMAFELIZ, JR., also known as "Duden," brought and attempted to bring alien A.G. to the United States, for the purpose of commercial advantage and private financial gain, knowing and in reckless disregard of the fact that alien A.G. had not received prior official authorization to come to, enter, and reside in the United States.

At the same time and place, defendant EVELYN PELAYO aided, abetted, counseled, commanded, induced, procured, and willfully caused the commission of the offense alleged above.

COUNT THREE

[8 U.S.C. § 1324(a)(2)(B)(ii); 18 U.S.C. §§ 2(a), (b)]

On or about May 21, 2007, in Los Angeles County, within the Central District of California, and elsewhere, defendant RODOLFO EBROLE DEMAFELIZ, JR., also known as "Duden," brought and attempted to bring alien J.D. to the United States, for the purpose of commercial advantage and private financial gain, knowing and in reckless disregard of the fact that alien J.D. had not received prior official authorization to come to, enter, and reside in the United States.

At the same time and place, defendant EVELYN PELAYO aided, abetted, counseled, commanded, induced, procured, and willfully caused the commission of the offense alleged above.

1

## COUNT FOUR

2
[8 U.S.C. §§ 1324(a)(1)(A)(iii), (a)(1)(B)(i)]

3
Beginning on or about October 15, 2005, and continuing to in

4
or about February 2008, in Los Angeles County, within the Central

5
District of California, defendant EVELYN PELAYO, knowing and in

6
reckless disregard of the fact that alien A.G. had come to,

7
entered, and remained in the United States in violation of law,

8
concealed, harbored, and shielded from detection alien A.G., and

9
did so for the purpose of commercial advantage and private

10
financial gain.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT FIVE

[8 U.S.C. §§ 1324(a)(1)(A)(iii), (a)(1)(B)(i)]

Beginning in or about May 2007, and continuing to in or about February 2008, in Los Angeles County, within the Central District of California, defendant EVELYN PELAYO, knowing and in reckless disregard of the fact that alien J.D. had come to, entered, and remained in the United States in violation of law, concealed, harbored, and shielded from detection alien J.D., and did so for the purpose of commercial advantage and private financial gain.

COUNT SIX

[18 U.S.C. § 1589]

Beginning on or about October 15, 2005, and continuing to in or about February 2008, in Los Angeles County, within the Central District of California, defendant EVELYN PELAYO knowingly provided and obtained the labor and services of A.G. by threats of serious harm to and physical restraint against A.G.; by means of a scheme, plan, and pattern intended to cause A.G. to believe that, if A.G. did not perform such labor and services, then A.G. would suffer serious harm and physical restraint; and by means of the abuse and threatened abuse of law and the legal process.

15

## COUNT SEVEN

### [18 U.S.C. § 1589]

Beginning in or about May 2007, and continuing to in or about February 2008, in Los Angeles County, within the Central District of California, defendant EVELYN PELAYO knowingly provided and obtained, the labor and services of J.D. by threats of serious harm to and physical restraint against J.D.; by means of a scheme, plan, and pattern intended to cause J.D. to believe that, if J.D. did not perform such labor and services, then J.D. would suffer serious harm and physical restraint; and by means of the abuse and threatened abuse of law and the legal process.

16

COUNT EIGHT

[18 U.S.C. § 1590]

Beginning on or about October 15, 2005, and continuing to in or about February 2008, in Los Angeles County, within the Central District of California, defendant EVELYN PELAYO, knowingly recruited, harbored, transported, provided, and obtained A.G. for the labor and services in violation of Title 18, United States Code, Section 1589, as alleged in count six of this first superseding indictment.

COUNT NINE

[18 U.S.C. § 1590]

Beginning in or about May 2007, and continuing to in or about February 2008, in Los Angeles County, within the Central District of California, defendant EVELYN PELAYO knowingly recruited, harbored, transported, provided, and obtained J.D. for labor and services in violation of Title 18, United States Code, Section 1589, as alleged in count seven of this first superseding indictment.

COUNT TEN

[18 U.S.C. § 1592]

Beginning on or about October 15, 2005, and continuing to in or about February 2008, in Los Angeles County, within the Central District of California, defendant EVELYN PELAYO, knowingly concealed, removed, confiscated, and possessed an actual passport of another, namely, a Filipino passport, number XXXX9165, issued to A.G., in the course of a violation of Title 18, United States Code, Section 1589 and 1590, as alleged in counts six and eight of this first superseding indictment; with intent to violate those same sections, as alleged in counts six and eight of this first superseding indictment; and to prevent, restrict, and attempt to prevent and restrict, without lawful authority, A.G.'s liberty to move and travel, in order to maintain the labor and services of A.G., who was a victim of a severe form of trafficking in persons, as defined in section 103 of the Trafficking Victims Protection Act of 2000.

COUNT ELEVEN

[18 U.S.C. § 1592]

Beginning in or about May 2007, and continuing to in or about February 2008, in Los Angeles County, within the Central District of California, defendant EVELYN PELAYO, knowingly concealed, removed, confiscated, and possessed an actual passport of another, namely, a Filipino passport, number XXXXX6649, issued to J.D., in the course of a violation of Title 18, United States Code, Section 1589 and 1590, as alleged in counts seven and nine of this first superseding indictment; with intent to violate those same sections, as alleged in counts seven and nine of this first superseding indictment; and to prevent, restrict, and attempt to prevent and restrict, without lawful authority, J.D.'s liberty to move and travel, in order to maintain the labor and services of J.D., who was a victim of a severe form of trafficking in persons, as defined in section 103 of the Trafficking Victims Protection Act of 2000.

1

2

3    COUNT TWELVE

[18 U.S.C. § 1594(b)]

The allegations of Counts Six through Nine of this
Indictment are hereby re-alleged and incorporated by reference
for the purpose of alleging forfeitures pursuant to Title 18,
United States Code, Section 1594(b).

Upon conviction of one or more of the offenses alleged in
Counts Six through Nine of this Indictment, defendant EVELYN
PELAYO, shall forfeit to the United States pursuant to Title 18,
United States Code, Section 1594(b), all property, real and
personal, that was used or intended to be used to commit or to
facilitate the commission of such offenses, and all property,
real and personal, constituting or derived from proceeds
obtained, directly or indirectly, as a result of such offenses.

A TRUE BILL

_____
Foreperson

THOMAS P. O'BRIEN
United States Attorney

MARK A. YOUNG
Executive Assistant United States Attorney

CURTIS A. KIN
Assistant United States Attorney
Chief, Domestic Security & Immigration Crimes Section

SANDY N. LEAL
Assistant United States Attorney
Deputy Chief, Domestic Security & Immigration Crimes Section

KAYLA BAKSHI
Trial Attorney
Civil Rights Division, U.S. Department of Justice

21