1 | THOMAS P. O'BRIEN
United States Attorney
2 | CHRISTINE C. EWELL
Assistant United States Attorney
3 | Chief, Criminal Division
SANDY N. LEAL (Cal. State Bar No.: 207179)
4 | Assistant United States Attorney
    Ronald Reagan Federal Building & United States Courthouse
5 |    411 West Fourth Street
    Santa Ana, California 92701
6 |    Telephone: (714) 338-3531
    Facsimile: (714) 338-3561
7 |    Email: Sandy.Leal@usdoj.gov

8 | KAYLA BAKSHI (Cal. State Bar No. 212561)
Trail Attorney
9 | Department of Justice
Civil Rights Division, Criminal Section
10 |    601 D Street NW, Washington DC 20004
    Telephone: (202) 514-8286
11 |    Facsimile: (202) 514-6588
    E-mail:  Kayla.Bakshi@usdoj.gov

12 | Attorneys for Plaintiff
13 | UNITED STATES OF AMERICA

14

15 |              UNITED STATES DISTRICT COURT

          FOR THE CENTRAL DISTRICT OF CALIFORNIA
16

17 | UNITED STATES OF AMERICA,   )  CR No. 08-458(A)-GAF
                   )
18 |          Plaintiff,  )  <u>PLEA AGREEMENT FOR DEFENDANT</u>
                   )  <u>EVELYN PELAYO</u>
19 |         v.        )
                   )
20 | EVELYN PELAYO,         )
RODOLFO EBROLE DEMAFELIZ,  )
21 | JR.,                 )
   aka "Duden,"      )
22 | ROLLETA EBROLE RIAZON, and  )
DARWIN PADOLINA,       )
23 |                 )
         Defendants.  )
24

25 |     1.  This constitutes the plea agreement between EVELYN
26 | PELAYO ("defendant") and the United States Attorney's Office for
27 | the Central District of California ("the USAO") in the above-
28 | captioned case.  This agreement is limited to the USAO and cannot

1 bind any other federal, state or local prosecuting,

2 administrative or regulatory authorities.

3                              PLEA

4      2.   Defendant agrees to plead guilty to counts six and

5 eleven of the first superseding indictment in <u>United States v.</u>

6 <u>Evelyn Pelayo, et al.</u>, CR No. 08-458(A)-GAF.

7                      NATURE OF THE OFFENSE

8      3.   In order for defendant to be guilty of count six, which

9 charges a violation of Title 18, United States Code, Section 1589

10 (Forced Labor), the following must be true: (1) defendant

11 knowingly provided or obtained the labor or services of a person;

12 and (2) defendant did so by employing (a) threats of serious harm

13 to, or physical restraint against, that person or another person;

14 (b) a scheme, plan, or pattern intended to cause the person to

15 believe that, if the person did not perform such labor or

16 services, that person or another person would suffer serious harm

17 or physical restraint; or (c) the abuse or threatened abuse of

18 law or the legal process.

19     In order for defendant to be guilty of count eleven, which

20 charges a violation of Title 18, United States Code, Section 1592

21 (Unlawful Conduct with Documents in Furtherance of Forced Labor),

22 the following must be true: (1) defendant knowingly destroyed,

23 concealed, removed, confiscated, or possessed any actual or

24 purported passport or other immigration document, or any other

25 actual or purported government identification document, of

26 another person; and (2) defendant did so, (a) in the course of a

27 violation of Title 18, United States Code, Sections 1581, 1583,

28

1584, 1589, 1590, 1591, or 1594(a); (b) with intent to violate
Title 18, United States Code, Sections 1581, 1583, 1584, 1589,
1590, or 1591; or (c) to prevent or restrict or attempt to
prevent or restrict, without lawful authority, the person's
liberty to move or travel, in order to maintain the labor or
services of that person, when the person is or has been a victim
of a severe form of trafficking in persons, as defined in section
103 of the Trafficking Victims Protection Act of 2000.  The term
"severe forms of trafficking in persons" is defined in section
103 of the Trafficking Victims Protection Act of 2000 as: (a) sex
trafficking in which a commercial sex act is induced by force,
fraud, or coercion, or in which the person induced to perform
such act has not attained 18 years of age; or (b) the
recruitment, harboring, transportation, provision, or obtaining
of a person for labor or services, through the use of force,
fraud, or coercion for the purpose of subjection to involuntary
servitude, peonage, debt bondage, or slavery.  Defendant admits
that defendant is, in fact, guilty of these offenses as described
in counts six and eleven of the first superseding indictment.

<u>PENALTIES</u>

4.   The statutory maximum sentence that the Court can impose
for a violation of Title 18, United States Code, Section 1589 is:
20 years imprisonment; a three-year period of supervised release;
a fine of $250,000 or twice the gross gain or gross loss
resulting from the offense, whichever is greatest; and a
mandatory special assessment of $100.

The statutory maximum sentence that the Court can impose for
a violation of Title 18, United States Code, Section 1592 is: 5

1   years imprisonment; a three-year period of supervised release; a
2   fine of $250,000 or twice the gross gain or gross loss resulting
3   from the offense, whichever is greatest; and a mandatory special
4   assessment of $100.  Therefore, the total maximum sentence for
5   all offenses to which defendant is pleading guilty is: 25 years
6   imprisonment; a 3-year period of supervised release; a fine of
7   $500,000 or twice the gross gain or gross loss resulting from the
8   offenses, whichever is greatest; and a mandatory special
9   assessment of $200.

10      5.  Supervised release is a period of time following
11   imprisonment during which defendant will be subject to various
12   restrictions and requirements.  Defendant understands that if
13   defendant violates one or more of the conditions of any
14   supervised release imposed, defendant may be returned to prison
15   for all or part of the term of supervised release, which could
16   result in defendant serving a total term of imprisonment greater
17   than the statutory maximum stated above.

18      6.  Defendant also understands that, by pleading guilty,
19   defendant may be giving up valuable government benefits and
20   valuable civic rights, such as the right to vote, the right to
21   possess a firearm, the right to hold office, and the right to
22   serve on a jury.

23      7.  Defendant further understands that the conviction in
24   this case may subject defendant to various collateral
25   consequences, including but not limited to deportation,
26   revocation of probation, parole, or supervised release in another
27   case, and suspension or revocation of a professional license.
28   Defendant understands that unanticipated collateral consequences

4

1  will not serve as grounds to withdraw defendant's guilty plea.

2  <u>FACTUAL BASIS</u>

3      8.  Defendant and the USAO agree and stipulate to the

4  statement of facts provided below.  This statement of facts is

5  sufficient to support a plea of guilty to the charge described in

6  this agreement and to establish the sentencing guideline factors

7  set forth in paragraph 11 below.  It is not meant to be a

8  complete recitation of all facts relevant to the underlying

9  criminal conduct or all facts known to either party that relate

10  to that conduct.

11      Beginning on or about October 15, 2005, and continuing to in

12  or about February 2008, defendant EVELYN PELAYO knowingly

13  provided and obtained the labor and services of alien A.G. by

14  means of the abuse and threatened abuse of law and the legal

15  process.  Defendant owned and operated Vernon Way Care Home,

16  L.L.C. ("Vernon Care Home") and Walton Care Home, L.L.C.,

17  ("Walton Care Home"), residential elder-care facilities in Long

18  Beach, California, within the Central District of California.

19      In or before August 2005, defendant requested that alien

20  A.G. to come to the United States to work as a care provider at

21  Vernon Care Home and Walton Care Home.  In or about August 2005,

22  co-defendant Rodolfo Ebrole Demafeliz ("Demafeliz") brought alien

23  A.G. to the United States with a fraudulently obtained visa,

24  specifically, the visa had been issued for the purpose of

25  attending martial arts competitions, when in truth and in fact,

26  alien A.G. was brought into the United States to work for

27  defendant at Vernon Care Home and/or Walton Care Home.

28      On or about October 7, 2005, co-defendant Demafeliz brought

1  alien A.G. from the Philippines to the United States by
2  presenting the fraudulently obtained visa to immigration
3  officials at the Los Angeles International Airport ("LAX") port
4  of entry.  After co-defendant Demafeliz and alien A.G.
5  successfully entered the United States, co-defendant Demafeliz
6  confiscated alien A.G.'s passport, transported alien A.G. to
7  defendant, and turned over alien A.G.'s passport to defendant.
8  Defendant paid co-defendant Demafeliz approximately $6,000 for
9  alien A.G. to be smuggled to Los Angeles, California, from the
10 Philippines.  However, defendant informed alien A.G. that she had
11 paid $12,000 to smuggle alien A.G. into the United States, and
12 that alien A.G. must work at Vernon Care Home and Walton Care
13 Home for ten years and repay defendant for alien A.G.'s smuggling
14 debt.

15      On or about October 15, 2005, defendant transported alien
16 A.G. to Vernon Care Home.  Beginning on or about October 15,
17 2005, and continuing until in or about February 2008, defendant
18 housed alien A.G. at Vernon Care Home.  Defendant employed alien
19 A.G. at Vernon Care Home and required that alien A.G. reside at
20 the nursing home facility.  Defendant paid alien A.G.
21 approximately $600 to $800 per month to work for Vernon Care
22 Home.  Defendant withheld $300 per month of the salary earned by
23 alien A.G. as payment towards alien A.G.'s smuggling debt owed to
24 defendant.

25      Defendant discouraged alien A.G. from speaking with
26 neighbors, patients, family members of patients, or law
27 enforcement officials.  Defendant threatened to notify law
28 enforcement officials of alien A.G.'s illegal presence in the

1  United States and to have alien A.G. deported to the Philippines
2  if alien A.G. tried to run away from defendant.  Defendant also
3  warned alien A.G. that she would falsely accuse alien A.G. of
4  stealing property and notify the police if alien A.G. ever tried
5  to run away from defendant.  Defendant also retained alien A.G.'s
6  passport.

7       Beginning in or about May 2007, and continuing to in or
8  about February 2008, defendant knowingly provided and obtained
9  the labor and services of alien J.D. by means of the abuse and
10 threatened abuse of law and the legal process.  In early 2007,
11 co-defendant Demafeliz brought alien J.D. to the United States
12 with a fraudulently obtained visa, specifically, the visa had
13 been issued for the purpose of attending martial arts
14 competitions, when in truth and in fact, alien J.D. was brought
15 into the United States to work for defendant at Vernon Care Home
16 and/or Walton Care Home.

17      On or about May 21, 2007, alien J.D. entered the United
18 States by presenting a fraudulently obtained visa to immigration
19 officials at the LAX port of entry.  After alien J.D.
20 successfully entered the United States, co-defendant Demafeliz
21 confiscated alien J.D.'s passport, transported alien J.D. to
22 defendant, and turned over alien J.D.'s passport to defendant.
23 Defendant paid co-defendant Demafeliz approximately $6,000 for
24 alien J.D. to be smuggled to Los Angeles, California, from the
25 Philippines.  However, defendant informed alien J.D. that she had
26 paid $12,000 to smuggle alien J.D. into the United States, and
27 that alien J.D. must work at Vernon Care Home until alien J.D.
28 had repaid defendant for his/her smuggling debt.

1    On or about May 21, 2007, defendant transported alien J.D.
2  to Vernon Care Home.  Beginning on or about May 21, 2007, and
3  continuing until in or about February 2008, defendant housed
4  alien J.D. at Vernon Care Home.  Defendant employed alien J.D. at
5  Vernon Care Home and required that alien J.D. reside at the
6  nursing home facility.  Defendant paid alien J.D. approximately
7  $600 per month to work for Vernon Care Home.  Defendant withheld
8  $300 per month of the salary earned by alien J.D. as payment
9  towards alien J.D. smuggling debt owed to defendant.

10    Defendant discouraged alien J.D. not to speak with
11  neighbors, patients, patients' family members, or law enforcement
12  officials.  Defendant threatened to notify law enforcement
13  officials of alien J.D.'s illegal presence in the United States
14  and to have alien J.D. deported to the Philippines if alien J.D.
15  tried to run away from defendant.  Defendant also confiscated
16  alien J.D.'s passport in furtherance of forced labor and in
17  violation of 18 U.S.C. § 1592.

18                 WAIVER OF CONSTITUTIONAL RIGHTS

19    9.  By pleading guilty, defendant gives up the following
20  rights:

21         a) The right to persist in a plea of not guilty.

22         b) The right to a speedy and public trial by jury.

23         c) The right to the assistance of legal counsel at
24  trial, including the right to have the Court appoint counsel for
25  defendant for the purpose of representation at trial.  (In this
26  regard, defendant understands that, despite her plea of guilty,
27  she retains the right to be represented by counsel -- and, if
28  necessary, to have the court appoint counsel if defendant cannot

1 afford counsel -- at every other stage of the proceeding.)

2            d) The right to be presumed innocent and to have the
3 burden of proof placed on the government to prove defendant
4 guilty beyond a reasonable doubt.

5            e) The right to confront and cross-examine witnesses
6 against defendant.

7            f) The right, if defendant wished, to testify on
8 defendant's own behalf and present evidence in opposition to the
9 charges, including the right to call witnesses and to subpoena
10 those witnesses to testify.

11           g) The right not to be compelled to testify, and, if
12 defendant chose not to testify or present evidence, to have that
13 choice not be used against defendant.

14      By pleading guilty, defendant also gives up any and all
15 rights to pursue any affirmative defenses, Fourth Amendment or
16 Fifth Amendment claims, and other pretrial motions that have been
17 filed or could be filed.

18                      <u>SENTENCING FACTORS</u>

19      10.  Defendant understands that the Court is required to
20 consider the factors set forth in 18 U.S.C. § 3553(a)(1)-(7),
21 including the kinds of sentence and sentencing range established
22 under the United States Sentencing Guidelines ("U.S.S.G." or
23 "Sentencing Guidelines"), in determining defendant's sentence.
24 Defendant further understands that the Sentencing Guidelines are
25 advisory only, and that after considering the Sentencing
26 Guidelines and the other § 3553(a) factors, the Court may be free
27 to exercise its discretion to impose any reasonable sentence up
28 to the maximum set by statute for the crime of conviction.

1      11.   Defendant and the USAO agree and stipulate to the

2  following applicable Sentencing Guidelines factors:

3      GROUP ONE: Forced Labor of Victim A.G. (Count 6)

4      Base Offense Level  :     +22     U.S.S.G. § 2H4.1(a)(1)

5      Specific Offense
       Characteristics
6
       Victim held in condition
7      of peonage or involuntary
       servitude for more
8      than one year       :     +3     U.S.S.G. § 2H4.1(b)(3)(A)

9      Felony Offense
       committed in connection
10     with peonage or
       involuntary servitude
11     offense
       (i.e., alien harboring):  +2     U.S.S.G. § 2H4.1(b)(4)(A)
12
       Subtotal:                27
13
       GROUP TWO: Unlawful Conduct Re: Documents for Victim J.D.
14     (Count 11)

15     Base Offense Level  :     +18     U.S.S.G. § 2H4.1(a)(2)

16     Specific Offense
       Characteristics
17
       Victim held in condition
18     of peonage or involuntary
       servitude between 180 days
19     and one year        :     +2     U.S.S.G. § 2H4.1(b)(3)(B)

20     Felony Offense
       committed in connection
21     with peonage or
       involuntary servitude
22     offense
       (i.e., alien harboring):  +2   U.S.S.G. § 2H4.1(b)(4)(A)
23
       Subtotal:                22
24  //

25  //

26  //

27  //

28  //

1    COMBINED ADJUSTED OFFENSE LEVEL

2    Greater of
     the Subtotals:            27
3
     Multi-count adjustment     +1     U.S.S.G. § 3D1.4
4
     Acceptance of
5    Responsibility    :       -3     U.S.S.G. § 3E1.1(a), (b)
6    ───────────────────────────────────────────────────────
     Total Offense Level :      25
7  The USAO will agree to a downward adjustment for acceptance of

8  responsibility (and, if applicable, move for an additional level

9  under § 3E1.1(b)) only if the conditions set forth in paragraph

10 15) are met.  Subject to paragraph 14, defendant and the USAO

11 agree not to seek, argue, or suggest in any way, either orally or

12 in writing, that any other specific offense characteristics,

13 adjustments or departures, relating to either the applicable

14 Offense Level or the Criminal History Category, be imposed.  If,

15 however, after signing this agreement but prior to sentencing,

16 defendant were to commit an act, or the USAO were to discover a

17 previously undiscovered act committed by defendant prior to

18 signing this agreement, which act, in the judgment of the USAO,

19 constituted obstruction of justice within the meaning of U.S.S.G.

20 § 3C1.1, the USAO would be free to seek the enhancement set forth

21 in that section.

22      12.   There is no agreement as to defendant's criminal

23 history or criminal history category.

24      13.   Defendant and the USAO, pursuant to the factors set

25 forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and

26 (a)(7), further reserve the right to argue for a sentence outside

27 the sentencing range established by the Sentencing Guidelines.

28      14.   The stipulations in this agreement do not bind either

                              11

1 the United States Probation Office or the Court.   Both defendant
2 and the USAO are free to: (a) supplement the facts by supplying
3 relevant information to the United States Probation Office and
4 the Court, (b) correct any and all factual misstatements relating
5 to the calculation of the sentence, and (c) argue on appeal and
6 collateral review that the Court's Sentencing Guidelines
7 calculations are not error, although each party agrees to
8 maintain its view that the calculations in paragraph 10 are
9 consistent with the facts of this case.

10                                  RESTITUTION

11      15.   Defendant understands that, under the mandatory
12 provisions of 18 U.S.C. § 1593, she is required to pay full
13 restitution to the Victims of her offenses for the full amount of
14 each Victim's losses, including: (1) the greater of the
15 gross income or value to the defendant of the Victim's services
16 and labor or the value of the Victim's labor as guaranteed under
17 the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq.;
18 and (2) any of the following "losses" that may have been suffered
19 by the Victim, including the cost of medical services relating to
20 physical, psychiatric, or psychological care, physical or
21 occupational therapy or rehabilitation, necessary transportation,
22 temporary housing, or child care expenses, lost income,
23 attorney's fees and costs, and other losses suffered as a
24 proximate result of the offenses.

25      Defendant agrees that the amount of restitution may include
26 losses arising from all "relevant conduct," as that term is
27 defined in the Sentencing Guidelines.   On or before the time of
28 sentencing, the parties will make arguments to the Court

                                      12

1  regarding the appropriate amount of restitution.  Defendant

2  understands that, at the time of sentencing, the Court will

3  determine the amount of restitution that must be paid by

4  defendant.

DEFENDANT'S OBLIGATIONS

6        16.   Defendant agrees that she will:

7             a) Plead guilty as set forth in this agreement.

8             b) Not knowingly and willfully fail to abide by all

9  sentencing stipulations contained in this agreement.

10             c) Not knowingly and willfully fail to: (i) appear for

11  all court appearances, (ii) surrender as ordered for service of

12  sentence, (iii) obey all conditions of any bond, and (iv) obey

13  any other ongoing court order in this matter.

14             d) Not commit any crime; however, offenses which would

15  be excluded for sentencing purposes under U.S.S.G. § 4A1.2(c) are

16  not within the scope of this agreement.

17             e) Not knowingly and willfully fail to be truthful at

18  all times with Pretrial Services, the U.S. Probation Office, and

19  the Court.

20             f) Pay the applicable special assessment at or before

21  the time of sentencing unless defendant lacks the ability to pay

22  and submits a completed financial statement (form OBD-500) to the

23  USAO prior to sentencing.

THE USAO'S OBLIGATIONS

25        17.   If defendant complies fully with all defendant's

26             obligations under this agreement, the USAO agrees:

27             a) To abide by all sentencing stipulations contained in

28  this agreement.

13

1          b)  To recommend that defendant be sentenced to a term
2   of imprisonment at the low end of the applicable Sentencing
3   Guidelines imprisonment range provided that the total offense
4   level as calculated by the Court is 25 or higher and provided
5   that the Court does not depart downward in offense level or
6   criminal history category.  For purposes of this agreement, the
7   low end of the Sentencing Guidelines imprisonment range is that
8   defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A,
9   without regard to reductions in the term of imprisonment that may
10  be permissible through the substitution of community confinement
11  or home detention as a result of the total offense level falling
12  within Zone B or Zone C of the Sentencing Table.

13                        BREACH OF AGREEMENT

14      18.  If defendant, at any time after the execution of this
15  agreement, knowingly violates or fails to perform any of
16  defendant's agreements or obligations under this agreement ("a
17  breach"), the USAO may declare this agreement breached.  If the
18  USAO declares this agreement breached at any time following its
19  execution, and the Court finds such a breach to have occurred,
20  then: (a) if defendant has previously entered a guilty plea,
21  defendant will not be able to withdraw the guilty plea, and (b)
22  the USAO will be relieved of all of its obligations under this
23  agreement.

24      19.  Following the Court's finding of a knowing and willful
25  breach of this agreement by defendant, should the USAO elect to
26  pursue any charge that was either dismissed or not filed as a
27  result of this agreement, then:

28          a) Defendant agrees that any applicable statute of

                                14

1 limitations is tolled between the date of defendant's signing of

2 this agreement and the commencement of any such prosecution.

3        b) Defendant gives up all defenses based on the statute

4 of limitations, any claim of pre-indictment delay, or any speedy

5 trial claim with respect to any such prosecution, except to the

6 extent that such defenses existed as of the date of defendant's

7 signing this agreement.

8        c) Defendant agrees that: (i) any statements made by

9 defendant, under oath, at the guilty plea hearing (if such a

10 hearing occurred prior to the breach); (ii) the stipulated

11 factual basis statement in this agreement; and (iii) any evidence

12 derived from such statements, are admissible against defendant in

13 any such prosecution of or action against defendant, and

14 defendant shall assert no claim under the United States

15 Constitution, any statute, Rule 410 of the Federal Rules of

16 Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure,

17 or any other federal rule, that the statements or any evidence

18 derived from any statements should be suppressed or are

19 inadmissible.

20                   <u>LIMITED MUTUAL WAIVER OF APPEAL</u>

21    20. Defendant gives up the right to appeal any sentence

22 imposed by the Court, and the manner in which the sentence is

23 determined, provided that (a) the sentence is within the

24 statutory maximum specified above and is constitutional, and (b)

25 the Court imposes a sentence within or below the range

26 corresponding to a total offense level of 25, and the applicable

27 criminal history category as determined by the Court.

28 Notwithstanding the foregoing, defendant retains any ability

1  defendant has to appeal the Court's determination of defendant's
2  criminal history category and the conditions of
3  probation/supervised release imposed by the Court, with the
4  exception of the following: conditions set forth in General
5  Orders 318, 01-05, and/or 05-02 of this Court; the drug testing
6  conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and
7  the alcohol and drug use conditions authorized by 18 U.S.C.
8  § 3563(b)(7).

9      21.  The USAO gives up its right to appeal the sentence,
10  provided that (a) the sentence is within the statutory maximum
11  specified above and is constitutional, and (b) the Court imposes
12  a sentence within or above the range corresponding to a total
13  offense level of 25, and the applicable criminal history category
14  as determined by the Court.

15  <u>COURT NOT A PARTY</u>

16      22.  The Court is not a party to this agreement and need not
17  accept any of the USAO's sentencing recommendations or the
18  parties' stipulations.  Even if the Court ignores any sentencing
19  recommendation, finds facts or reaches conclusions different from
20  any stipulation, and/or imposes any sentence up to the maximum
21  established by statute, defendant cannot, for that reason,
22  withdraw defendant's guilty plea, and defendant will remain bound
23  to fulfill all defendant's obligations under this agreement.  No
24  one -- not the prosecutor, defendant's attorney, or the Court --
25  can make a binding prediction or promise regarding the sentence
26  defendant will receive, except that it will be within the
27  statutory maximum.

28

<u>NO ADDITIONAL AGREEMENTS</u>

23.   Except as set forth herein, there are no promises, understandings or agreements between the USAO and defendant or defendant's counsel.   Nor may any additional agreement, understanding or condition be entered into unless in a writing signed by all parties or on the record in court.

<u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

24.   The parties agree and stipulate that this Agreement will be considered part of the record of defendant's guilty plea hearing as if the entire Agreement had been read into the record of the proceeding.

This agreement is effective upon signature by defendant and an Assistant United States Attorney.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA

THOMAS P. O'BRIEN
United States Attorney

_____          3/17/2009
SANDY N. LEAL                                            Date
Assistant United States Attorney

I have read this agreement and carefully discussed every part of it with my attorney.   I understand the terms of this agreement, and I voluntarily agree to those terms.   My attorney has advised me of my rights, of possible defenses, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.   No promises or inducements have been given to me other than those contained in

17

1   this agreement.   No one has threatened or forced me in any way to

2   enter into this agreement.   Finally, I am satisfied with the

3   representation of my attorney in this matter.

4

5   _____          March 15, 2009

    EVELYN PELAYO                               Date

6   Defendant

7        I am EVELYN PELAYO's attorney.   I have carefully discussed

8   every part of this agreement with my client.   Further, I have

9   fully advised my client of her rights, of possible defenses, of

10  the sentencing factors set forth in 18 U.S.C. § 3553(a), of the

11  relevant Sentencing Guidelines provisions, and of the

12  consequences of entering into this agreement.   To my knowledge,

13  my client's decision to enter into this agreement is an informed

14  and voluntary one.

15

16  _____          3/17/09

17  PHILIP P. DELUCA                            Date

    Counsel for Defendant

18  Evelyn Pelayo

19

20

21

22

23

24

25

26

27

28

                                  18