GEORGE CARDONA
Acting United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
SANDY N. LEAL (Cal. State Bar No. 207179)
Assistant United States Attorney
Ronald Reagan Federal Building and United States Courthouse
    411 West Fourth Street
    Santa Ana, California 92701
    Telephone: (714) 338-3531
    Facsimile: (714) 338-3561
    E-mail:  Sandy.Leal@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) CR No. 08-458(A)-GAF |
|---|---|
| Plaintiff, | ) GOVERNMENT'S POSITION RE: SENTENCING |
| v. | ) |
| EVELYN PELAYO, | ) SENTENCING DATE: Oct. 19, 2009<br>) SENTENCING TIME: 1:30 p.m. |
| Defendant. | ) |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, hereby files its sentencing position relating to defendant EVELYN PELAYO.

    The government's position regarding sentencing is based upon the attached memorandum of points and authorities, the files and records in this case, the Presentence Report, and any other

//
//

1 evidence or argument that the court may wish to consider at the
2 time of sentencing.
3 DATED: September 25, 2009        Respectfully submitted,
4                                  GEORGE CARDONA
                                   Acting United States Attorney
5
                                   CHRISTINE C. EWELL
6                                  Assistant United States Attorney
                                   Chief, Criminal Division
7

8
                                    /s/
9                                  SANDY N. LEAL
                                   Assistant United States Attorney
10
                                       Attorneys for Plaintiff
11                                     United States of America

MEMORANDUM OF POINTS AND AUTHORITIES

I.

INTRODUCTION

A. Defendant's Plea Agreement

On March 23, 2009, defendant Evelyn Pelayo pled guilty pursuant to a plea agreement to forced labor and unlawful conduct with documents in furtherance of forced labor, in violation of Title 18, United States Code, Sections 1589 and 1592. Pursuant to the terms of the plea agreement, the parties have stipulated to a total offense level of 25 based on the following calculation:

GROUP ONE: Forced Labor of Victim A.G. (Count 6)

| | | | |
|---|---|---|---|
| Base Offense Level | : | +22 | U.S.S.G. § 2H4.1(a)(1) |
| Specific Offense Characteristics | | | |
| Victim held in condition of peonage or involuntary servitude for more than one year | : | +3 | U.S.S.G. § 2H4.1(b)(3)(A) |
| Felony Offense committed in connection with peonage or involuntary servitude offense (i.e., alien harboring) | : | +2 | U.S.S.G. § 2H4.1(b)(4)(A) |
| **Subtotal** | | **27** | |

GROUP TWO: Unlawful Conduct Re: Documents for Victim J.D. (Count 11)

| | | | |
|---|---|---|---|
| Base Offense Level | : | +18 | U.S.S.G. § 2H4.1(a)(2) |
| Specific Offense Characteristics | | | |
| Victim held in condition | | | |

3

```
        of peonage or involuntary
        servitude between 180 days
        and one year           :      +2       U.S.S.G. § 2H4.1(b)(3)(B)

        Felony Offense
        committed in connection
        with peonage or
        involuntary servitude
        offense
        (i.e., alien harboring):     +2     U.S.S.G. § 2H4.1(b)(4)(A)

        Subtotal:                    22

        COMBINED ADJUSTED OFFENSE LEVEL

        Greater of
        the Subtotals:               27

        Multi-count adjustment       +1       U.S.S.G. § 3D1.4

        Acceptance of
        Responsibility      :        -3       U.S.S.G. § 3E1.1(a), (b)
        _____

        Total Offense Level :        25
```

Pursuant to the plea agreement, the government also agreed to recommend that defendant be sentenced to a term of imprisonment at the low end of the applicable Sentencing Guidelines range provided that the total offense level as calculated by the Court is 25 or higher and provided that the Court does not depart downward in offense level or criminal history category.

B.   The Presentence Report

The United States Probation Office ("USPO") prepared a Presentence Report ("PSR") disclosed on May 19, 2009, calculating a guidelines range of 63 to 78 months based on a total offense level of 26 and a criminal history category of I.  (PSR ¶¶ 65, 72, 115).  The USPO's determination is based on the following calculations:

<u>Count Six: Forced Labor of Victim A.G.</u>

| | | | |
|---|---|---|---|
| Base Offense Level : | +22 | U.S.S.G. § 2H4.1(a)(1) | |

Specific Offense Characteristics

| | | | |
|---|---|---|---|
| Victim held in condition of peonage or involuntary servitude for more than one year : | +3 | U.S.S.G. § 2H4.1(b)(3)(A) | |
| Felony Offense committed in connection with peonage or involuntary servitude offense (i.e., 18 U.S.C. § 1592): | +2 | U.S.S.G. § 2H4.1(b)(4)(A) | |
| **Subtotal:** | **27** | | |

<u>Count 11: Unlawful Conduct Re: Documents for Victim J.D.</u>

| | | | |
|---|---|---|---|
| Base Offense Level : | +18 | U.S.S.G. § 2H4.1(a)(2) | |

Specific Offense Characteristics

| | | | |
|---|---|---|---|
| Victim held in condition of peonage or involuntary servitude between 180 days and one year : | +2 | U.S.S.G. § 2H4.1(b)(3)(B) | |
| Felony Offense committed in connection with peonage or involuntary servitude offense (i.e., 18 U.S.C. § 1589): | +6 | U.S.S.G. § 2H4.1(b)(4)(A) | |
| **Subtotal:** | **26** | | |

<u>MULTIPLE COUNT ADJUSTMENT</u>

| | | | |
|---|---|---|---|
| Greater of the Subtotals: | 27 | | |
| Multi-count adjustment | +2 | U.S.S.G. § 3D1.4 | |
| Acceptance of Responsibility : | -3 | U.S.S.G. § 3E1.1(a), (b) | |

1     Total Offense Level :     26
2 The USPO recommends that the Court sentence defendant to 63
3 months imprisonment, consisting of 63 months on count 6 and 60
4 months on count 11, to be served concurrently, a term of three
5 years supervised release, a special assessment of $200, and
6 restitution in the total amount of $167,389.43.
7 C.    <u>Government's Position Re: Sentencing</u>
8     The government hereby concurs with the findings of the
9 Guideline Presentence Report.  However, the PSR's total offense
10 level calculations differ from the parties agreed to calculations
11 in the plea agreement.  The PSR calculations differ from the
12 parties calculations in that the PSR imposes a six-level
13 enhancement for felony offense committed in connection with
14 involuntary servitude and a two-level multiple count adjustment.
15 The USPO concluded that defendant obtained the forced labor of
16 victim J.D. by various threats, including withholding his
17 passport in violation of 18 U.S.C. § 1589.  (PSR ¶¶ 50-51).  As
18 such, the USPO added six levels pursuant to U.S.S.G.
19 § 2H4.1(b)(4)(B) as opposed to the two-level enhancement for
20 alien harboring pursuant to U.S.S.G. § 2H4.1(b)(4)(B) that the
21 parties agreed to in the plea agreement.  Because the USPO
22 determined that the adjusted offense level for count 11 was 26, a
23 two-level multiple count adjustment was applied (as opposed to
24 the one-level multiple count adjustment applied by the parties in
25 the plea agreement).  Consequently, the USPO determined a total
26 offense level of 26 as opposed to the parties' agreed to total
27
28                                         6

offense level of 25.  While the government recognizes the validity of the USPO's calculations, the government remains bound to the total offense level agreed to by the parties in the plea agreement.  Accordingly, pursuant to the plea agreement, the government recommends that the Court sentence defendant to 57 months imprisonment, a three-year period of supervised release under the terms and conditions recommended by the USPO, a special assessment of $200, and restitution in the total amount of $167,389.43 to be paid under the terms and conditions recommended by the USPO.

II.

ARGUMENT

A.  UNDER THE SENTENCING GUIDELINES, A LOW-END SENTENCE OF 57 MONTHS IMPRISONMENT IS APPROPRIATE.

While the Sentencing Guidelines are no longer mandatory, the Court must still consider the Sentencing Guidelines in determining defendant's sentence.  <u>United States v. Booker</u>, 543 U.S. 220 (2005).  The USPO determined that defendant's total offense level is 26, and her criminal history category is I.  Consequently, the USPO asserts that defendant's Guidelines range is 63 to 78 months.  The parties have agreed and stipulated that defendant's total offense level is 25.  Consequently, the parties assert that defendant's Guidelines range is 57 to 71 months.  With respect to the appropriate sentence within the Guidelines range, the government submits that a low-end term of 57 months imprisonment followed by a three-year period of supervised release is appropriate.  As discussed below, this recommendation

reflects the history and characteristics of defendant, the kinds of sentences available, and affords adequate deterrence to criminal conduct.

B.  UNDER THE FACTORS SET FORTH IN 18 U.S.C. § 3553, A 57-MONTH TERM OF IMPRISONMENT IS PROPER.

Title 18, United States Code, Section 3553(a) sets forth various factors for the Court to consider in determining the particular sentence to be imposed.

1.  <u>The Nature And Circumstances Of The Offense And The History And Characteristics Of The Defendant Warrant A 57-Month Sentence</u>.

Section 3553(a) provides that the Court shall consider the nature and circumstances of the offense and the history and characteristics of the defendant. Defendant is a 53-year old female, native of the Philippines. (PSR ¶ 77). On or about August 16, 1996, defendant became a naturalized United States citizen. (PSR ¶ 83).

From 1996 until April 3, 2008, defendant owned and operated Vernon Way Care Home, L.L.C. ("Vernon Care Home") and Walton Care Home, L.L.C., ("Walton Care Home"), residential elder-care facilities in Long Beach, California. (PSR ¶¶ 14, 95). At each of these elder care facilities, defendant provided housing and care for approximately six patients. (PSR ¶ 95). Defendant's patients/customers paid approximately $3,000 per a month to reside at the elder care facilities. (<u>Id.</u>). Defendant employed approximately two to three employees at each elder care facility and paid them between $800 to $1,000 per month. (PSR ¶¶ 30, 95).

8

Forced Labor of Alien A.G.

Beginning on October 15, 2005, and continuing to February 24, 2008, defendant provided and obtained the labor and services of alien A.G. by means of the abuse and threatened abuse of law and the legal process. (PSR ¶ 13). In August 2005, defendant requested that alien A.G. come to the United States to work as a care provider at Vernon Care Home and Walton Care Home. (PSR ¶ 15). On October 7, 2005, co-defendant Rodolfo Ebrole Demafeliz ("Demafeliz") brought alien A.G. to the United States with a fraudulently obtained visa. (PSR ¶ 16). After co-defendant Demafeliz and alien A.G. successfully entered the United States, co-defendant Demafeliz confiscated alien A.G.'s passport, transported alien A.G. to defendant, and turned over alien A.G.'s passport to defendant. (Id.). Defendant paid co-defendant Demafeliz approximately $6,000 for alien A.G. to be smuggled to Los Angeles, California, from the Philippines. (PSR ¶ 18). However, defendant informed alien A.G. that she had paid $12,000 to smuggle alien A.G. into the United States, and that alien A.G. must work at Vernon Care Home and Walton Care Home for ten years and repay defendant for alien A.G.'s smuggling debt. (Id.).

On or about October 15, 2005, defendant transported alien A.G. to Vernon Care Home. (PSR ¶ 19). From October 2005 to February 2008, defendant housed and employed alien A.G. at Vernon Care Home. (Id.). Defendant paid alien A.G. approximately $600 to $800 per month to work for Vernon Care Home. (Id.). Defendant withheld $300 per month of the salary earned by alien

A.G. as payment towards alien A.G.'s smuggling debt owed to defendant. (Id.). At Vernon Care Home, alien A.G. worked approximately 24 hours a day, seven days a week, caring for five to six elders at the care home. (PSR ¶ 30).

Defendant discouraged alien A.G. from speaking with neighbors, patients, family members of patients, or law enforcement officials. (PSR ¶ 20). Defendant threatened to notify law enforcement officials of alien A.G.'s illegal presence in the United States and to have alien A.G. deported to the Philippines if alien A.G. tried to run away from defendant. (Id.). Defendant also warned alien A.G. that she would falsely accuse alien A.G. of stealing property and notify the police if alien A.G. ever tried to run away from defendant. (Id.). Defendant also retained alien A.G.'s passport, refusing to return the passport even when asked on several occasions. (Id.).

### Forced Labor of Alien J.D.

Beginning in May 2007, and continuing to February 19, 2008, defendant provided and obtained the labor and services of alien J.D. by means of the abuse and threatened abuse of law and the legal process. (PSR ¶ 22). On or about May 21, 2007, alien J.D. entered the United States by presenting a fraudulently obtained visa to immigration officials at the LAX port of entry. (PSR ¶ 23). After alien J.D. successfully entered the United States, co-defendant Demafeliz confiscated alien J.D.'s passport, transported alien J.D. to defendant, and turned over alien J.D.'s passport to defendant. (Id.).

Defendant paid co-defendant Demafeliz approximately $6,000 for alien J.D. to be smuggled to Los Angeles, California, from the Philippines. (PSR ¶ 25). However, defendant informed alien J.D. that she had paid $12,000 to smuggle him into the United States, and that he must work at Vernon Care Home until he had repaid defendant for his smuggling debt. (Id.).

From May 21, 2007 until February 2008, defendant employed alien J.D. at Vernon Care Home and required that alien J.D. reside at the nursing home facility. (PSR ¶ 26). Defendant paid alien J.D. approximately $600 per month to work for Vernon Care Home. (Id.). Defendant withheld approximately $200 per month of the salary earned by alien J.D. as payment towards alien J.D. smuggling debt owed to defendant. (Id.).

Defendant discouraged alien J.D. from speaking with neighbors, patients, patients' family members, or law enforcement officials. (PSR ¶ 27). Defendant threatened to notify law enforcement officials of alien J.D.'s illegal presence in the United States and to have alien J.D. deported to the Philippines if alien J.D. tried to run away from defendant. (Id.). Defendant also confiscated alien J.D.'s passport and refused to return the passport even when asked. (Id.).

On February 19, 2008, alien J.D. left defendant's employment without permission from defendant. (PSR ¶ 28). After learning that alien J.D. left Vernon Care Home without permission, defendant and her husband searched the neighborhood for alien J.D. (PSR ¶ 29). Thereafter, defendant falsely reported to the

Long Beach Police Department that alien J.D. had stolen jewelry from defendant and that alien J.D. had since disappeared. (PSR ¶ 28). Defendant's housekeeper confirmed that on the night that alien J.D. ran away, defendant gave her jewelry to hide. (PSR ¶ 29). After defendant made the false police report, defendant took the jewelry back from the housekeeper. (Id.).

While defendant does not have any criminal history and has accepted responsibility for her actions in the instant offense, defendant's overall conduct in committing the offense was egregious and reprehensible. Defendant concocted a scheme to smuggle illegal aliens into the United States to work as caregivers in her elder care facilities at little to no pay in order to personally profit.[1] Defendant prayed on Filipino nationals, personal acquaintances from her native country, and used their illegal status and unfamiliarity of this country to instill fear in them and exploit their labor. In order to further control the workers, defendant threatened them with deportation, advised them to be fearful of law enforcement, confiscated their passports, and restricted their freedom of movement. Given defendant's conduct in the instant offense, defendant's history and characteristics warrant a sentence of 57-months imprisonment.

2. The Need For The Sentence Imposed.

---

[1] According to the U.S. Department of Labor, defendant owes a total of $167,389.43 in back wages to alien A.G. and J.D. for their respective periods of employment. (PSR ¶ 35).

12

1  Section 3553(a)(2) provides that in determining the
2 particular sentence to be imposed, the Court shall consider the
3 need for the sentence to be imposed.  Among the factors to be
4 considered are the need to reflect the seriousness of the
5 offense, to promote respect for the law, to provide just
6 punishment for the offense, and to afford adequate deterrence to
7 criminal conduct.  An analysis of those factors supports a
8 sentence of 57-months imprisonment.
9  Defendant is being sentenced for engaging in forced labor
10 and confiscating a passport in furtherance of forced labor.
11 Defendant held victim A.G. in a condition of involuntary
12 servitude for almost three years and victim J.D. for almost a
13 year.  Defendant was able to hold both victim A.G. and J.D. in
14 such condition by confiscating their passports, threatening
15 deportation, requiring them to work almost 24 hours a day, and
16 restricting their communications and movement. Defendant's
17 sentence should reflect the seriousness of the crime of obtaining
18 labor and services of a person by the abuse or threatened abuse
19 of law or the legal process.  Accordingly, a sentence of 57-
20 months imprisonment followed by a three-year period of supervised
21 release would reflect the seriousness of the crime, promote
22 respect for the law, and is a sufficiently adequate to deter
23 defendant from future criminal conduct.
24 //
25 //
26 //
27
28                                    13

III.

CONCLUSION AND RECOMMENDATION

For all of these reasons, the government respectfully requests that the Court impose a sentence of 57 months imprisonment, a three-year period of supervised release under the terms and conditions recommended by the USPO, a special assessment of $200, and restitution in the total amount of $167,389.43 to be paid under the terms and conditions recommended by the USPO.

The government respectfully requests the opportunity to supplement its position as may become necessary.